UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA KENNEDY,<br><br>       Plaintiff,<br>v.<br><br>STUART M. CHASE, in his<br>individual capacity, and the<br>TOWN OF DANVERS,<br><br>       Defendants. | CIVIL ACTION NO. 05-10191-GAO |

**JOINT PRETRIAL MEMORANDUM**

**I.   SUMMARY OF THE EVIDENCE**

    **A.   Plaintiff's Anticipated Evidence**

        **1.   Liability**

Plaintiff alleges that Danvers Chief of Police Stuart Chase violated her First Amendment rights to petition to government and to free speech, and used unreasonable force while he arrested her without probable cause when she tried to file a citizen's complaint against one of his officers.

On September 25, 2003, a Danvers police officer left a notice to remove an unregistered vehicle at Mrs. Kennedy's home. The notice said the car would be towed away if it was not moved in thirty days. Four days later, on September 29, 2003, another Danvers police officer came to remove Mrs. Kennedy's car. Mrs. Kennedy felt that the police officer was rude, harassing and intimidating. Later that afternoon, Mrs. Kennedy went to at the Danvers police station to meet with Chief of Police Stuart Chase and to file a complaint against the officer who had been at her home. When she tried to explain what had happened, Chief Chase interrupted her telling her why she was

not entitled to thirty days before her car could be towed. When Mrs. Kennedy tried to respond, Chief Chase became upset and yelled that the meeting was over. He ordered her to get out of his office.

Mrs. Kennedy stood from her chair, walked towards the hallway, turned and asked whether she had the right to file a complaint. Captain Neil Ouellette remembered her saying that she would not leave until she could file a complaint. Chief Chase, who had followed her to the door, grabbed Mrs. Kennedy by her left upper arm, turned her to the right towards the stairs and told her, "You have the right to get out of here. There's the stairs." When she was touched, Mrs. Kennedy told Chief Chase that he was assaulting her and asked him to let go of her arm. Instead of releasing her arm, Chief Chase told her that she was under arrest. When she asked what for, he shouted back, "For trespassing!" He then dragged her by the arm, down the hallways and the stairs, to the booking desk. Mrs. Kennedy was held in a holding cell for approximately two hours. The criminal charge of trespass was dismissed on request of the Commonwealth the following day.

2.   **Damages**

After her release from the police station, Mrs. Kennedy went to the emergency room at Beverly Hospital where she was seen for contusions to her left arm where Chief Chase had grabbed her. She then followed up with Dr. Janice Crognale, her primary care physician, who referred Mrs. Kennedy to Jane Finklestein, a licenced clinical social worker. Mrs. Kennedy was diagnosed with post traumatic stress disorder. She has been prescribed medications to help her depression, anxiety and panic disorder. She began therapy with Ms. Finklestein on October 8, 2003 and has met with her on average of once a week through the present time. She complained of being paranoid and fearful, difficulty sleeping, nightmares, and thinking about the incident which makes her angry. Mrs. Kennedy is still very upset about the incident. Her medical bills for treatment related to the incident total more than $13,000.

### B. Defendant's Anticipated Evidence

#### 1. Liability

The evidence will show that Ms. Kennedy was living in a public housing development in Danvers. She had a junked vehicle on the street in front of her house. The Manager of the complex had asked Ms. Kennedy to remove the vehicle on a number of occasions. Ms. Kennedy did not remove the vehicle, so the manager asked the Danvers police to arrange to tow it. Lt. Woytovich was sent to the scene to accompany a tow truck that was dispatched to haul away the abandoned, unregistered vehicle that belonged to Ms. Kennedy. While he was there, Ms. Kennedy repeatedly yelled at Woytovich, who did his best to ignore her.

Subsequently, Ms. Kennedy went to the police station to complain about Officer Woytovich. After inviting her into his office and hearing her story, Chief Chase told Ms. Kennedy that she would be given a complaint form to fill out. Ms. Kennedy began yelling and he asked her to leave. She refused to leave his office. When it became clear that Ms. Kennedy would not leave willingly, she was placed under arrest for trespassing. Later that day, the chief learned that Ms. Kennedy had had "brain surgery" in the past. Believing that her condition may have impacted her behavior, he directed the court officer to drop the charge, and it was.

#### 2. Damages

Ms. Kennedy was already being treated for depression and anxiety prior to her arrest as evidenced by the anti-psychotic medications that she was on when she presented to the Emergency Room on the evening of her arrest. As noted in that ER record, Ms. Kennedy was already taking Pamalor, an antidepressant, and Xanax, used to treat anxiety and panic disorders, before she was ever arrested. Ms. Kennedy's anxiety disorder was either largely or entirely pre-existing. Whatever contusion Ms. Kennedy suffered was the result of her resistance to being arrested, which arrest was

lawful.

**II.    FACTS ESTABLISHED BY PLEADINGS, ADMISSIONS, OR STIPULATIONS**

    1.    Defendant Stuart Chase was at all times material to this complaint the Chief of Police in the Town of Danvers.

    2.    Chief Stuart Chase was acting under color of state law at the time of the incident alleged by the plaintiff.

    3.    On September 29, 2003, officer David Woytovich was near the plaintiff's home and had an interaction with Mrs. Kennedy regarding an unregistered motor vehicle outside her home.

    4.    Police dispatcher James Ciman brought Mrs. Kennedy to Chief Chase's office to meet with him.

    5.    During her conversation with Chief Chase, Mrs. Kennedy indicated she wished to file a complaint against officer David Woytovich.

    6.    Mrs. Kennedy accused Chief Chase of assaulting her.

    7.    The criminal trespassing charge was dismissed upon request of the Commonwealth at Mrs. Kennedy's first court appearance the following day.

**III.    CONTESTED ISSUES OF FACT**

    1.    Did Chief Chase arrest Mrs. Kennedy without probable cause?

    2.    Did Chief Chase use unreasonable force on Mrs. Kennedy?

    3.    Did Chief Chase retaliate against Mrs. Kennedy for exercising her First Amendment rights by attempting to file a complaint against a Danvers police officer?

    4.    Did Chief Chase's conduct violate the Massachusetts Civil Rights Act?

    5.    Did Chief Chase commit the tort of false imprisonment of Mrs. Kennedy?

    6.    Did Chief Chase commit the tort of malicious prosecution of Mrs. Kennedy?

    7.    Did Chief Chase commit the tort of assault and battery against Mrs. Kennedy?

    8.    What injuries, if any, did Mrs. Kennedy suffer as a result of this incident?

    9.    What amount of damages, if any, is necessary to compensate Mrs. Kennedy for any

injuries suffered by her?

10. Was Chief Chase the policymaker for the Town of Danvers?

11. Is the Town of Danvers liable for the conduct of its police chief?

**IV.    JURISDICTIONAL QUESTIONS**

There are no jurisdictional issues.

**V.    QUESTIONS RAISED BY PENDING MOTIONS**

There are no pending motions.

**VI.    ISSUES OF LAW**

    **A.    Motions in Limine**

        1.    Incident underlying plaintiff's citizen complaint

Plaintiff will file a motion to limit evidence regarding the incident earlier in the day which was the subject of her complaint because the issues raised by the plaintiff in this case concern retaliation against her because she attempted to file a complaint. The merits of her complaint are not at issue. Litigating the incident earlier in the day would distract the jury and needlessly spend court time.

Defendant intends to oppose any artificial pre-trial limit to the scope of testimony that may be relevant to explaining the confrontation with Officer Woytovich that led Ms. Kennedy to go to the police station on the day she was arrested. That incident is also relevant to Ms. Kennedy's overall state of mind and demeanor on the day in question.

**VII.    REQUESTED AMENDMENTS TO THE PLEADINGS**

No amendments have been requested.

**VIII.    ADDITIONAL MATTERS TO AID IN DISPOSITION OF THIS ACTION**

None.

IX.    **PROBABLE LENGTH OF TRIAL**

The parties estimate that the trial by jury is expected to take 5 days.

X.    **NAMES AND ADDRESSES OF WITNESSES**

For convenience, the witnesses are listed by the party who is expected to call the witness. The parties reserve the right to call any listed witness. This list does not include any witnesses who will only be called as rebuttal witnesses.

    A.    **Plaintiff's Factual Witnesses**

        1.    Plaintiff Cynthia Kennedy

        2.    Joan C. St. Pierre

        3.    Melody Kriteman

        4.    Julia Kennedy

        5.    Jamy Whitcomb

        6.    Jane Finkelstein, LICSW

        7.    Police dispatcher James Ciman

        8.    Sgt. Det. Carole Germano

        9.    Police officer Robert Sullivan*

        10.    Elizabeth Frost*

        11.    Alfred J. Finocchiaro*

        12.    Richard A. Bolduc*

Witnesses marked with * will be called only if the court allows the defendants to try the incident that formed the basis of the plaintiff's complaint to the Chief of Police.

    B.    **Defendant's Factual Witnesses**

        13.    Police officer William J. Cassidy, Jr.

  14. Police officer David Woytovich.

  15. Defendant Stuart Chase

  16. Chief Neil Ouellette

XI. **PROPOSED EXHIBITS**

 A. **Agreed Upon Exhibits**

  1. Criminal Docket

  2. Application for Criminal Complaint

  3. Criminal Complaint

  4. Photograph of plaintiff's arm

  5. Thirty-day notice to remove unregistered motor vehicle

  6. Kennedy's complaint (witness statement)

  7. Bail receipt

  8. Beverly Hospital, medical records

  9. Health and Education Services, Inc., medical records

  10. Lahey Hamilton Wenham Family Practice, medical records

  11. Medical bills

 B. **Contested Exhibits**

  12. Salem News article

  13. Physician's Desk Reference information for Xanax, Pamalor, Provigil, Toprol, and Ritalin

  14. Medical Records of Dr. Stephen R. LoVerme

XII. **APPENDIX WITH PROPOSED JURY INSTRUCTIONS**

Each party will separately file proposed jury instructions.

XI. **PROPOSED VOIR DIRE OF THE JURY PANEL AND PROPOSED SPECIAL VERDICT FORMS**

Each party will separately file proposed voir dire and proposed special verdict forms.

RESPECTFULLY SUBMITTED,

For Plaintiff Cynthia Kennedy:
By her attorneys,

/s/ Howard Friedman
_____
Howard Friedman, BBO# 180080
Myong J. Joun, BBO# 645099
**Law Offices of Howard Friedman, P.C.**
90 Canal Street, 5th Floor
Boston, MA 02114-2022
T (617) 742-4100
F (617) 742-5858
hfriedman@civil-rights-law.com
mjjoun@civil-rights-law.com


For Defendants Stuart Chase
and the Town of Danvers:
By their attorney,

/s/ Leonard H. Kesten
_____
Leonard H. Kesten, BBO #542042
Peter E. Montgomery, BBO #632698
**Brody, Hardoon, Perkins & Kesten**
One Exeter Plaza
Boston, MA 02116
T (617) 880-7100
F (617) 880-7171
lkesten@bhpklaw.com
pmontgomery@bhpklaw.com